**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

WILLIAM ROTH and JANICE BEAR, husband and wife,

Plaintiffs,

v.

WESTFIELD INSURANCE COMPANY,

Defendant.

CIVIL ACTION

No. 2:26-cv-07305

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs William Roth and Janice Bear, through their counsel, Pollack Law, LLC, bring this action against Westfield Insurance Company and allege as follows:

### PARTIES AND JURISDICTION

1. Plaintiff William Roth is an adult individual domiciled in West Chester, Chester County, Pennsylvania, and a citizen of Pennsylvania.

2. Plaintiff Janice Bear is an adult individual domiciled in West Chester, Chester County, Pennsylvania, and a citizen of Pennsylvania. She is Mr. Roth's wife and was his wife when the collision described below occurred.

3. Defendant Westfield Insurance Company ("Westfield") is a corporation organized under Ohio law with its principal place of business in Westfield Center, Ohio. Westfield is therefore a citizen of Ohio for purposes of 28 U.S.C. § 1332(c)(1).

4. Westfield issued the Pennsylvania automobile insurance coverage at issue to Plaintiffs, Pennsylvania residents, and undertook to provide coverage for their insured risks in Pennsylvania. This action arises from that insurance relationship and Westfield's handling

of Plaintiffs' claim under that coverage. Westfield is subject to personal jurisdiction in Pennsylvania in this action.

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiffs and Westfield are completely diverse. The amount in controversy on Mr. Roth's claim alone exceeds $75,000, exclusive of interest and costs, after allowance for the underlying liability settlement and applicable credits. Plaintiffs do not rely on aggregation of their separate claims to satisfy that amount.

6. To the extent Ms. Bear's claims do not independently satisfy the jurisdictional amount, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a). Her claims arise from the same collision, injuries, policy, and claim handling as Mr. Roth's claims and form part of the same case or controversy.

7. Venue is proper under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claims occurred in this District: the underlying collision occurred in Chester County, and the insureds and insured risks relevant to this action are located in this District.

8. For purposes of Local Civil Rules 5.1.1 and 53.2, the damages sought exceed $150,000, exclusive of interest and costs.

## THE INSURANCE COVERAGE

9. Westfield issued policy number WNP 0243971 to William Roth and Janice Bear for the policy period February 4, 2020 through February 4, 2021 ("Policy"). Both Plaintiffs are identified as named insureds in the declarations.

10. The Policy was in effect on January 4, 2021. Its automobile coverage includes underinsured motorist ("UIM") bodily-injury coverage, designated "STACKED" in the declarations, with

a stated limit of $300,000 each accident and separate UIM premiums for two insured vehicle units.

11. The applicable stacked UIM limit is $600,000, consisting of $300,000 for each of the two insured vehicles. Plaintiffs seek the coverage purchased under the Policy, consistent with 75 Pa.C.S. § 1738(a). They do not allege that each Plaintiff has a separate additional $600,000 limit for this accident.

12. The Policy's UIM coverage protects insured persons against covered damages arising from bodily injury caused by the use of an underinsured motor vehicle. Pennsylvania's UIM statute provides for protection of persons injured through the maintenance or use of a motor vehicle who are legally entitled to recover damages from owners or operators of underinsured motor vehicles. 75 Pa.C.S. § 1731(c).

13. Mr. Roth seeks UIM benefits for his collision-related bodily injuries and resulting losses. Ms. Bear, herself a named insured and party to the Policy, seeks covered UIM benefits for her loss of consortium resulting from her husband's bodily injuries.

**THE COLLISION AND THE UNDERINSURED DRIVER**

14. On January 4, 2021, at approximately 6:18 a.m., Mr. Roth was operating a 2015 Honda Odyssey northbound on U.S. Route 1, also known as East Baltimore Pike, near South Orchard Avenue in East Marlborough Township, Chester County, Pennsylvania.

15. The other driver, identified in the claim correspondence as Matias Jaimes-Mendiola and in State Farm's correspondence as Matias Jaimes ("the tortfeasor"), was operating a 1998 Ford Explorer.

16. The tortfeasor entered Route 1 from South Orchard Avenue and attempted to cross the northbound lanes to turn left toward the southbound lanes. He entered the path of Mr. Roth's approaching vehicle.

17. Mr. Roth braked and attempted to steer away, but the vehicles collided. The impact caused Mr. Roth's vehicle to roll over and come to rest on its roof. Emergency personnel mechanically extricated him, and he was transported to ChristianaCare for evaluation and treatment.

18. The investigating Pennsylvania State Police trooper recorded the tortfeasor's statement that ice on his vehicle's windows obstructed his view toward southbound traffic and that he did not see Mr. Roth's vehicle before the impact.

19. The police investigation also identified an independent witness who described the tortfeasor's vehicle entering the northbound lanes in front of Mr. Roth's vehicle and Mr. Roth's unsuccessful attempt to avoid the collision.

20. The tortfeasor was negligent, amongst other actions, in entering and crossing the highway when it was unsafe to do so; failing to yield to approaching traffic; failing to maintain a proper lookout; operating with an obstructed view; and failing to maintain control of his vehicle so as to avoid striking Mr. Roth's vehicle.

21. The tortfeasor's negligence was a factual and legal cause of the collision and of the injuries and losses described below.

## INJURIES AND RESULTING LOSSES

22. The collision caused Mr. Roth to sustain traumatic brain damage with post-concussion symptoms, together with cervical and lumbar injuries and associated pain. His treating and

evaluating providers have documented persistent cognitive, physical, and psychological impairments following the collision.

23. His post-collision symptoms include, but are not limited to, headaches, impaired attention and concentration, short-term memory difficulty, slowed processing, difficulty finding words, dizziness and impaired balance, personality changes, post-traumatic stress disorder, tinnitus, neck and low-back pain, and upper-extremity sensory symptoms.

24. Mr. Roth underwent physical, occupational, speech, neurological, and psychological treatment. Treatment has included rehabilitative therapies, medication, pain-management injections, and psychotherapy directed to his post-traumatic symptoms.

25. The records document improvement in some functions with treatment. On April 30, 2021, speech-language pathologist Maria Puntel Kurtz, CCC-SLP, discharged Mr. Roth from outpatient speech therapy after he met treatment goals. Her note reported cognitive-communication testing within normal limits, improved attention, memory, word finding and processing speed, and independence in using compensatory strategies.

26. The April 30, 2021 speech-therapy discharge did not end Mr. Roth's subsequent neurological and psychological care. Later evaluations documented continuing symptoms and impairments, as set forth in the following paragraphs.

27. Neurologist Steven Grossinger, D.O., evaluated Mr. Roth's continuing post-concussion complaints and cognitive deficits, including through neurocognitive testing addressed in his September 25, 2022 report.

28. On August 5, 2024, Mr. Roth underwent brain MRI with diffusion tensor imaging ("DTI"). The imaging report identified microstructural abnormalities and recommended clinical correlation. The report also described chronic microvascular changes. Plaintiffs rely on the

imaging together with the clinical evaluations and causation opinions, rather than alleging that every imaging abnormality, standing alone, establishes traumatic causation.

29. In his October 12, 2024 report, neurologist Nabil M. Yazgi, M.D., diagnosed traumatic brain injury with cerebral concussion and post-concussion syndrome; cervical sprain/strain superimposed on cervical spondylosis; cervical disc herniation and radiculopathy; and lumbosacral sprain/strain with lumbar disc herniation and radiculopathy. He attributed the injuries to the January 4, 2021 collision and described the traumatic brain injury as permanent.

30. In her December 30, 2024 report, Janet R. Belitsky, Psy.D., CBIS, a psychologist with a specialty in neuropsychology, documented her treatment of Mr. Roth beginning April 6, 2021. She described continuing cognitive deficits, post-traumatic stress disorder, anxiety and depression associated with the collision and its consequences, notwithstanding treatment.

31. Dr. Belitsky reported persistent interference with Mr. Roth's personal, social and occupational functioning, opined that his symptoms would be chronic, and recommended continued psychological treatment and neurorehabilitation.

32. In his March 15, 2026 narrative report, Dr. Grossinger addressed persistent neurological symptoms, the clinical significance of the MRI/DTI findings in the context of Mr. Roth's history, and the presence of preexisting microvascular disease. He opined that Mr. Roth sustained permanent neurological injuries from the collision and would require continuing care.

33. Mr. Roth seeks compensation for injuries caused by the collision and for collision-related aggravation of preexisting conditions, to the extent established by the medical evidence. He

does not seek compensation for unrelated conditions or their independent natural progression.

34. His collision-related injuries have impaired his ability to work in his seasonal produce business, perform household activities, travel, drive, participate in recreational activities, and engage in his customary personal and family life.

35. As a result of the collision, Mr. Roth has incurred medical and rehabilitation expenses and has sustained pain, suffering, emotional distress, inconvenience, loss of enjoyment of life, and impairment of earning capacity. He seeks recovery of past and future losses to the extent caused by the collision and recoverable under the Policy and Pennsylvania law.

36. His continuing cognitive impairment, chronic post-traumatic symptoms, and limitations in daily functioning constitute a serious impairment of body function within the meaning of 75 Pa.C.S. § 1702. His injuries satisfy the serious-injury threshold to the extent that a limited-tort restriction is applicable, although it is maintained that as a matter of policy, coverage and law that Mr. Roth is covered under a Full Tort policy.

37. Ms. Bear has suffered loss and impairment of her husband's companionship, society, affection, assistance, services and marital relationship because of his collision-related injuries. Those losses have continued as his symptoms and functional limitations have persisted.

38. Plaintiffs seek only legally recoverable damages. They do not seek duplicate recovery of expenses or benefits excluded by applicable law, including 75 Pa.C.S. § 1722, and their recovery is subject to applicable settlement credits and the Policy's enforceable terms and limits.

## LIABILITY SETTLEMENT AND WESTFIELD'S CONSENT

39. State Farm Mutual Automobile Insurance Company insured the tortfeasor with bodily-injury liability limits of $15,000 per person and $30,000 per accident. State Farm confirmed the applicable coverage in writing.

40. By letter dated August 18, 2022, Plaintiffs' counsel notified Westfield of the insufficiency of the tortfeasor's liability coverage, requested UIM benefits, and requested consent to settle the underlying bodily-injury claim for $15,000.

41. State Farm confirmed its $15,000 settlement offer in a letter dated September 8, 2022. Plaintiffs' counsel renewed the request for Westfield's consent by letter dated September 10, 2022.

42. By letter dated September 21, 2022, under claim number 0002264966 and a January 4, 2021 date of loss, Westfield expressly consented to the settlement between Mr. Roth and State Farm on behalf of its insured Matias Jaimes and waived subrogation against them.

43. The underlying claim was resolved for the $15,000 liability limit. The third-party settlement was finalized on September 26, 2022 upon acceptance of the settlement and payment of the third-party policy limits of $15,000.00. That amount is insufficient to compensate Plaintiffs for their collision-related losses. The tortfeasor's vehicle was an underinsured motor vehicle within the meaning of 75 Pa.C.S. § 1702.

## THE UIM SUBMISSION AND WESTFIELD'S RESPONSE

44. Plaintiffs submitted their UIM claim to Westfield under claim number 0002264966 and subsequently furnished a settlement memorandum describing Mr. Roth's injuries, treatment, continuing impairments, economic losses, and Ms. Bear's consortium claim.

45. Before making an offer described herein below, Westfield received the medical documentation supporting that submission, including, amongst other records, the brain MRI with DTI, orthopedic records and reports, neurological reports, and psychological and neuropsychological reports. The submission included the later specialist evidence described in paragraphs 27 through 32 and the complete medical record containing the speech-therapy discharge assessment.

46. By June 17, 2026, Westfield had only offered $65,000 to resolve the UIM claim. Plaintiffs did not accept it as full compensation for their covered losses as the offer was grossly inadequate given the catastrophic nature of the injuries, including brain damage.

47. Westfield's adjuster, Steve Garner, verbally explained to Plaintiffs' counsel that the speech pathologist had said Mr. Roth needed no further treatment because the issue had resolved. That was the only basis Westfield communicated to Plaintiffs' counsel for the $65,000 offer.

48. That explanation did not address, nor seem to consider, the subsequent neurological and psychological findings, the later MRI/DTI and its clinical interpretation, the specialists' permanency opinions, the continuing cervical and lumbar conditions, the significant affect and losses regarding Mr. Roth's ability to perform his normal activities of daily living, or the consortium losses presented in the submission.

49. The April 30, 2021 speech-therapy assessment preceded the September 2022 neurocognitive evaluation, the August 2024 MRI/DTI, the October 2024 neurological report, the December 2024 psychological report, and the March 2026 neurological report. Those later records documented continuing impairments after the speech-therapy discharge.

50. Covered UIM benefits remain unpaid. Plaintiffs' dispute concerns Westfield's failure to pay the benefits due for the losses established by the full claim submission and its handling of that evidence, including its reliance on the speech-pathology assessment in explaining the offer.

**COUNT I**
**Breach of Contract for UIM Benefits**
**William Roth v. Westfield Insurance Company**

51. Mr. Roth incorporates paragraphs 1 through 50 as if fully set forth here, in conformity with F.R.C.P. 10[c].

52. The Policy is a valid insurance contract between Mr. Roth, Ms. Bear, and Westfield, and Mr. Roth and Ms. Bear are insureds entitled to invoke its UIM coverage for the January 4, 2021 collision.

53. The tortfeasor's negligence caused Mr. Roth's bodily injuries and resulting losses, and Mr. Roth is legally entitled to recover damages exceeding the tortfeasor's available liability coverage.

54. Mr. Roth presented his UIM claim and supporting medical documentation to Westfield. Westfield received notice of the underlying liability settlement, consented in writing, and waived subrogation.

55. Westfield is obligated under the Policy to pay the covered UIM benefits due for Mr. Roth's losses, subject to the applicable stacked limit and lawful credits. Westfield has breached that obligation by failing to pay those benefits.

56. As a result of Westfield's breach, Mr. Roth has been deprived of contractual benefits and has sustained damages exceeding $75,000, exclusive of interest and costs, after applicable credits.

WHEREFORE, Plaintiff William Roth demands judgment against Westfield Insurance Company for the UIM benefits proven due under the Policy, subject to the applicable stacked coverage limit and lawful credits; prejudgment interest and delay damages to the extent permitted by applicable law and without duplication; postjudgment interest under 28 U.S.C. § 1961; taxable costs; and such other relief as the Court deems proper.

**COUNT II**
**Breach of Contract for Covered Consortium Damages**
**Janice Bear v. Westfield Insurance Company**

57. Ms. Bear incorporates paragraphs 1 through 56 as if fully set forth here, in conformity with F.R.C.P. 10[c].

58. Ms. Bear is a named insured and a contracting party under the Policy. Her claim is for insurance benefits covering consortium damages arising from her husband's bodily injuries caused by the underinsured tortfeasor.

59. Because of Mr. Roth's collision-related injuries, Ms. Bear has sustained the consortium losses described in paragraph 37, for which she seeks covered compensation under the Policy.

60. Westfield has failed to pay the UIM benefits due for those covered losses and has thereby breached its contractual obligation to Ms. Bear.

61. Ms. Bear has sustained damages from that breach. She seeks her covered consortium damages within the applicable UIM limit, without duplication of Mr. Roth's recovery and without alleging an additional separate limit for the same bodily injury.

WHEREFORE, Plaintiff Janice Bear demands judgment against Westfield Insurance Company for the UIM benefits proven due for her covered consortium damages, subject to the Policy's applicable limits and lawful credits; prejudgment interest to the extent legally recoverable and

without duplication; postjudgment interest under 28 U.S.C. § 1961; taxable costs; and such other relief as the Court deems proper.

**COUNT III**
**Statutory Bad Faith under 42 Pa.C.S. § 8371**
**William Roth and Janice Bear v. Westfield Insurance Company**

62. Plaintiffs incorporate paragraphs 1 through 61 as if fully set forth here, in conformity with F.R.C.P. 10[c].

63. Both Plaintiffs are named insureds, and this action arises under an insurance policy within the meaning of 42 Pa.C.S. § 8371.

64. An insurer handling a UIM claim owes its insured a duty of good faith notwithstanding the potentially adversarial nature of the valuation dispute. Condio v. Erie Insurance Exchange, 899 A.2d 1136, 1144–45 (Pa. Super. Ct. 2006).

65. Section 8371 requires clear and convincing proof that the insurer lacked a reasonable basis for denying benefits and knew of or recklessly disregarded that lack of a reasonable basis. Self-interest or ill will is not a separate required element. Rancosky v. Washington National Insurance Co., 170 A.3d 364, 377 (Pa. 2017).

66. Plaintiffs challenge Westfield's handling of the medical evidence and the stated basis of its $65,000 offer. Westfield possessed the MRI/DTI and the later specialist reports addressing continuing injuries and permanence, but its only communicated explanation relied on a speech-pathology assessment that the issue had resolved and further treatment was unnecessary.

67. The speech-therapy discharge documented improvement in the functions tested in April 2021. That documentation focused on Mr. Roth's issues surrounding his speech and not the other issues addressed through the multitude of additional treating doctors and experts.

Further, it did not address the later MRI/DTI or the later specialist findings, and it did not purport to resolve Mr. Roth's orthopedic injuries, chronic post-traumatic stress disorder, or all of the losses for which Plaintiffs sought UIM benefits.

68. The subsequent reports placed Westfield on notice that the claim included continuing neurological, psychological and orthopedic injuries after the speech-therapy discharge. In particular, the 2024 and 2026 reports described persistent impairments, permanence, and future treatment needs. Westfield had those reports when it made the offer.

69. Using the speech-therapy resolution assessment as the primary stated basis for the $65,000 offer failed to account for the materially different and later evidence presented. The stated explanation did not reconcile the 2021 improvement focusing on speech treatment, with those later findings or explain the valuation of the other injury components and consortium losses.

70. Plaintiffs allege that Westfield lacked a reasonable basis for withholding the covered benefits due on the complete submission and that its reliance on limited records taken out of the full context of injuries and impact, despite its possession of the later and broader medical evidence, constituted knowing or reckless disregard of the absence of a reasonable basis for that conduct.

71. The asserted knowledge or recklessness is grounded in Westfield's receipt of those specific reports, their chronology and materially different findings, and Mr. Garner's stated reason for the offer. Plaintiffs do not premise this claim solely on the percentage of policy limits offered, a disagreement over value, or an assertion that an opening offer must equal a final award.

72. An insurer's obligation to evaluate a claim according to the evidence is not displaced by disagreement over a settlement demand. See Klinger v. State Farm Mutual Automobile Insurance Co., 115 F.3d 230, 234 (3d Cir. 1997). Plaintiffs allege the specific unreasonable handling described above, rather than treating an unsuccessful negotiation or mere negligence as statutory bad faith.

73. As a result of the conduct alleged, Plaintiffs have been deprived of the use of insurance benefits claimed due and have incurred and will incur expenses in pursuing their contractual and statutory remedies. Moreover, the claimed requirement for additional information, when the defendant possesses the medical proofs verifying the extensive damages that exceed the policy limits, will further expose Mr. Roth to further damages and cause additional damage from a neuropsychological and psychological perspective, especially as it relates to his post-traumatic stress disorder.

74. Westfield's knowing or reckless disregard of the lack of a reasonable basis for the conduct alleged warrants the relief authorized by 42 Pa.C.S. § 8371, including punitive damages, statutory interest, court costs and reasonable attorney fees.

WHEREFORE, Plaintiffs William Roth and Janice Bear demand judgment against Westfield Insurance Company under 42 Pa.C.S. § 8371 for: (a) interest on the amount of the claim from the date the claim was made, at the prime rate plus three percent; (b) punitive damages; (c) court costs and reasonable attorney fees; and (d) such other relief as the Court deems proper. Plaintiffs also request postjudgment interest as provided by 28 U.S.C. § 1961 and seek no duplicative recovery of interest or costs.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment, Plaintiffs demand trial by jury of twelve (12) members with two (2) alternates on all issues triable of right by jury, including their claim for punitive damages under 42 Pa.C.S. § 8371. See Klinger, 115 F.3d at 236.

Respectfully submitted,

POLLACK LAW, LLC

By: ______________________________

Ronald S. Pollack, Esquire
Pennsylvania Attorney I.D. No. 56553
210 East Street Road, Suite 3A
Feasterville, Pennsylvania 19053
Telephone: (215) 396-9660
Email: ron@fightingforpeople.com

Counsel for Plaintiffs

Dated: September 22, 2026